UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN JOHNSON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>WALMART, INC.,<br><br>　　　　　　Defendant. | No. 1:20-cv-01360-DAD-JLT<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br><br>(Doc. No. 20) |

This matter is before the court on the motion to compel arbitration on behalf of defendant Walmart Inc. (Doc. No. 20.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, defendant's motion was taken under submission on the papers. (Doc. No. 21.) For the reasons explained below, the court will deny defendant's motion to compel arbitration.

**BACKGROUND**

On November 23, 2020, plaintiff Kevin Johnson initiated this class action against defendant Walmart Inc. on behalf of two putative classes. (Doc. No. 1.) On December 11, 2020, plaintiff filed the second amended complaint. (Doc. No. 19.) Therein, plaintiff brings claims against defendant for (1) breach of contract and (2) violation of duty of good faith and fair dealing. (*Id.* at ¶¶ 32–49.)

1

1    In his second amended complaint, plaintiff alleges the following.  In July 2018, plaintiff purchased tires from defendant Walmart Inc.'s website Walmart.com.  (Doc. No. 19 at ¶ 4.)  Plaintiff then had those tires installed at one of defendant's Auto Care Centers.  (*Id.*)  While at the Auto Care Center, plaintiff separately purchased defendant's lifetime tire balance and rotation service at an additional cost.  (*Id.*)

In April 2020, plaintiff sought to receive balancing and rotation services in Victoria, Texas but was denied service because defendant voluntarily ceased specific operations at its Auto Care Centers across the nation in or around March 2020, including tire balancing and rotation services.  (*Id.* at ¶¶ 5, 8.)  Plaintiff sought service at other Auto Care Centers in Texas, Arizona, and California and was also denied service at those locations.  (*Id.* at ¶¶ 6–7.)

On December 28, 2020, defendant filed the motion to compel individual arbitration and to dismiss or stay this action.  (Doc. No. 20.)  On January 19, 2021, plaintiff filed his opposition.  (Doc. No. 24.)  On January 26, 2021, defendant filed his reply thereto.  (Doc. No. 25.)  On February 22, 2021, defendant filed a request for leave to file notice of supplemental authority in support of the pending motion to dismiss or stay.  (Doc. No. 27.)

**LEGAL STANDARD**

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA").  9 U.S.C. § 2.  The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them.  9 U.S.C. § 4.  In considering a motion to compel arbitration, a court must determine "(1) whether a valid agreement to arbitrate exists" and "(2) whether the agreement encompasses the dispute at issue."  *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 719 (9th Cir. 2020) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If a valid arbitration agreement that encompasses the dispute at issue is found to exist, arbitration is mandatory.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

There is an "emphatic federal policy in favor of arbitral dispute resolution."  *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985).  As such, "any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 626, (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 at 24–25 (1983)). "Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982)).

**DISCUSSION**

Defendant argues that the court must compel arbitration of plaintiff's claims on an individual basis and dismiss or stay this action because: (1) plaintiff agreed to a binding arbitration clause contained in the website's Terms of Use when he purchased tires on Walmart.com, and (2) plaintiff's claims related to tire service must be arbitrated because these claims arise from the purchase of those tires. (Doc. No. 20-1 at 2.) Plaintiff counters that the court cannot compel arbitration because the claim at issue arises from his in-store purchase of tire services, not the purchase of the tires themselves. (Doc. No. 24 at 7.) According to plaintiff, that purchase was a separate transaction, and thus should not be subject to the arbitration clause depicted on defendant's website's Terms of Use related to his earlier online tire purchase. (*Id.*)

**A.     Whether the Parties Entered into a Valid Contract with an Arbitration Agreement**

The court first must determine if a valid arbitration agreement exists that would compel arbitration. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016). "The party seeking to compel arbitration bears the burden of establishing that a valid agreement to arbitrate exists by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). When "the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014). Courts "should apply ordinary state-law principles that govern the formation of contracts" to decide whether the parties agreed to arbitrate. *Starace v. Lexington Law Firm*, No. 1:18-cv-01596-DAD-SKO, 2019 WL 2642555, at *3 (E.D. Cal. June 27, 2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

1     Defendant argues that plaintiff had notice of and accepted the Terms of Use containing the
2 arbitration clause by completing his tire order on Walmart.com.  (Doc. No. 20-1 at 3.)  Before
3 making an online purchase from Walmart.com, defendant represents that the customer is directed
4 to the following language:  "By clicking Place Order, you agree to Walmart's Updated **Privacy**
5 **Policy** and **Terms of Use**."  (Doc. No. 20-2 at 2.)  Customers may click on the bolded, underlined
6 terms to view those documents.  (*Id.*)  No customer can complete an order on the website without
7 agreeing to Walmart.com's Terms of Use and Privacy Policy.  (*Id.* at 4.)  When plaintiff
8 purchased tires from defendant's website, defendant argues that he agreed to be bound by
9 Walmart.com's Terms of Use for all claims arising from the tire purchase.  (Doc. Nos. 19 at ¶ 4;
10 20-1 at 2.)  Defendant further contends that plaintiff has not presented evidence refuting his
11 agreement to defendant's Terms of Use.  (Doc. No. 25 at 8.)  Defendant notes that "the Terms of
12 Use does not purport to bind the parties to arbitrate every conceivable dispute, but rather requires
13 arbitration only of 'all disputes arising out of or related to these Terms of Use or any aspect of the
14 relationship between you and Walmart.'"  (Doc. No. 25 at 8.)

15     Plaintiff does not dispute that the arbitration clause covers his purchase of tires on
16 Walmart.com, only that it does not govern his later, separate purchase of the tire service
17 agreement from one of defendant's Auto Care Centers.  (Doc. No. 24 at 7.)  Plaintiff also argues
18 that defendant's arbitration provision violates general principles of contract formation because
19 "an objective reasonable person would not intend to bind themselves to arbitrate every
20 conceivable dispute between parties in perpetuity."  (Doc. No. 24 at 10.)  Plaintiff contends that
21 general principles of contract formation apply to arbitration clauses, and that applying such
22 principles here the court should find a lack of mutual assent.  (Doc. No. 24 at 10.)  In this regard,
23 plaintiff argues that mutual assent was lacking because he would not have agreed to relinquish all
24 of his rights to sue for anything in exchange for the ability to purchase tires online on a single
25 occasion.  (Doc. No. 24 at 9–10.)  In support of this assertion, plaintiff cites the decision in
26 *Revitch v. DirecTV, LLC*, No. 18-cv-01127-JCS, 2018 WL 4030550 (N.D. Cal. Aug. 23, 2018).
27 (*Id.* at 10.)  In that case the arbitration agreement at issue was one that appeared on the website of
28 DirecTV's larger parent company, AT&T, with whom plaintiff had a wireless services account.

4

1   *Revitch*, 2018 WL 4030550 at *1-2. Defendant DirecTV argued that the arbitration agreement
2   plaintiff had entered into with AT&T compelled him to arbitrate his claims against it because
3   DirecTV was an affiliate of AT&T. *Id.* Upon reviewing and analyzing the agreements as well as
4   the applicable California law (*id*. at *7-16), the district court concluded "that the arbitration
5   provision in the contract between [p]laintiff and AT&T Mobility does not reflect an intent to
6   arbitrate the claim [p]laintiff asserts against DirecTV in this action." *Id.* at *17.

7   Here, the parties are in agreement that plaintiff did not sign any other contract or
8   document with a mandatory arbitration clause when he purchased tire services agreement at one
9   of defendant's Auto Care Centers. Thus, the central dispute is whether the Walmart.com Terms
10  of Use, which the parties agree cover plaintiff's actual tire purchase, can be applied to the tire
11  services plaintiff later purchased separately in-store.

12  Courts are to interpret arbitration agreements under the FAA applying the plain meaning
13  rule. *Valencia v. Smyth*, 185 Cal. App. 4th 153, 176 (2010). Under that rule, the words of the
14  contract are to be given their usual and ordinary meaning. *Id.* at 162. The plain meaning of the
15  contract seeks to give effect to the mutual intention of the parties. *Garner v. Inter-State Oil Co.*,
16  52 Cal. App. 5th 619, 622 (2020). Here, by its very terms, the Walmart.com website Terms of
17  Use applies solely to a customer's use of "Walmart sites." (Doc. No. 20-6 at 2–3.) "Walmart
18  Sites" is defined as "www.walmart.com, the Walmart mobile site . . . the Walmart Apps, and all
19  related functionality, services, and Content offered by or for Walmart on or through
20  www.walmart.com and the Walmart Apps or the systems, servers, and networkers used to make
21  the Walmart Sites available." (Doc. No. 20-6 at 2–3.) "The FAA requires courts 'rigorously' to
22  'enforce arbitration agreements according to their terms.'" *Walsh v. Arizona Logistics, Inc.*, 998
23  F.3d 393, 396 (9th Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233
24  (2013)). Here, the Terms of Use, and its arbitration clause, is specifically limited by its very
25  terms to disputes related to online purchases. As a result, plaintiff cannot be compelled to
26  arbitrate his claims relating to an in-store purchase which is not covered by the Terms of Use
27  provision on its face.
28  /////

      Defendant cites numerous cases to support their position that arbitration can be compelled based on acceptance of a website's terms of use containing an arbitration clause in some way related to an online purchase if the arbitration clause is broadly construed . (Doc. No. 20-1 at 8.) However, the cases relied upon by defendant all related to disputes regarding arbitration clauses for online purchases *and* where the purchase at issue was actually made online. *See, e.g.*, *Lee v. Ticketmaster L.L.C.*, 817 Fed. App'x. 393, 394–95 (9th Cir. 2020) (holding that tickets which were purchased online were clearly subject to the online arbitration clause found in the website's terms of use).  Defendant has not pointed the court to any case where a website's terms of use were applied to a separate, in-store purchase made by the plaintiff.  As in *Revitch*, defendant here seeks to impose an arbitration clause from a previous contract onto a new, separate agreement from which a dispute arose.  By clicking "Place Order" on defendant's website, plaintiff did not agree to arbitrate all disputes related to a separate, in-person purchase that was made well after the online purchase.

      Accordingly, the court concludes that no valid agreement to arbitrate exists between the parties here that would encompass the dispute at issue.  Thus, arbitration cannot be compelled.  Put another way, the court finds no valid arbitration clause exists between these parties that would compel arbitration of this dispute based on the plain meaning of the language used in the Terms of Use and a lack of mutual assent to arbitrate at the time plaintiff purchased defendant's tire service agreement.  Because the court finds that there is no contract governing this dispute, the court need not address any of plaintiff's contract formation arguments.  Similarly, defendant's request to that this action be stayed or dismissed pending arbitration has been rendered moot.

## CONCLUSION

      For the reasons stated above, defendant's motion to compel arbitration and to dismiss or stay this action (Doc. No. 20) is denied.  This matter is referred back to the assigned magistrate judge for purposes of scheduling.

IT IS SO ORDERED.

Dated: __**July 29, 2021**__        _/s/ Dale A. Drozd_
      UNITED STATES DISTRICT JUDGE